UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-80995-CIV-HURLEY/HOPKINS

ARNOLD I. ANISMAN,

    Plaintiff,

v.

JOHN W. SNOW, Secretary of Department
of Treasury,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the court upon the defendant's partial motion to dismiss [DE # 42], which the court has converted into a partial motion for summary judgment [DE # 49], and the defendant's motion for summary judgment [DE # 62]. The court held oral argument on these motions on July 20, 2006. At that time, the court extended the discovery cut-off in this case to August 31, 2006. The court then directed the plaintiff to submit any supplementary memoranda, documentary evidence, or other materials relating to the defendant's pending motion for summary judgment by September 18, 2006. To date, the plaintiff has not submitted any additional evidence or materials related to the instant motions, and the matter is now ripe for review. For the reasons expressed herein, the court will grant the defendant's motions for summary judgment.

### FACTUAL BACKGROUND

This is a Title VII employment discrimination case in which the plaintiff claims that he was the victim of reverse gender discrimination. Plaintiff Arnold Anisman is a white male and a resident of Palm Beach County, Florida. Mr. Anisman is an attorney and is admitted to practice law in the

state of Florida. Since July 1998, Mr. Anisman has been employed as an estate tax attorney in the West Palm Beach office of the Internal Revenue Service ("IRS"). The Internal Revenue Service is an agency within the Department of Treasury. At the time this suit was initiated, defendant John W. Snow was the Secretary of the Department of Treasury.[1] The plaintiff is suing the Secretary of the Department of Treasury in his official capacity.

In 1994, Mr. Anisman held a GS-12 estate tax attorney position in the IRS's West Palm Beach office. In 1994, 1995, and 1996, Mr. Anisman responded to published IRS vacancy announcements and applied for promotion to a GS- 13 estate tax attorney position. In each of these yeas, on July 14, 1994, May 14, 1995, and September 23, 1996, Mr. Anisman was denied promotion to a GS-13 estate tax attorney position.[2]

Mr. Anisman first sought counseling with an IRS Equal Employment Office ("EEO") counselor on October 10, 1996. Counseling was not successful and Mr. Anisman was issued a Notice of Right to File a Discrimination Complaint. Mr. Anisman subsequently filed a formal complaint letter with the IRS alleging that he was the victim of discrimination on the basis of sex in that female employees had received promotions in less time than male employees. Specifically, Mr. Anisman alleged that sex discrimination had resulted in his non-selection for a GS-13 estate tax attorney position. As a federal employee, Mr. Anisman's case worked its way through the administrative framework set up within the Department of Treasury and the Equal Employment Opportunity Commission ("EEOC"). On August 4, 2003, after numerous appeals and remands within and

---

[1] During the pendency of this action, Secretary John M. Snow was succeeded in office by the appointment of Henry Paulson. Secretary Paulson was sworn into office on July 10, 2006.

[2] Mr. Anisman was ultimately promoted to a GS-13 position in February 2000.

between those agencies, an EEOC administrative law judge dismissed Mr. Anisman's claims concerning the 1994 and 1995 non-selections for promotion as untimely.  On August 13, 2003, the same EEOC administrative law judge dismissed Mr. Anisman's claim concerning the 1996 non-selection for promotion on the merits.

After receiving notice of final action, Mr. Anisman timely filed a complaint with this court. The operative complaint in this case contains two counts: (1) for individual disparate treatment sex discrimination premised on the defendant's failure to promote Mr. Anisman in 1994, 1995, and 1996; and (2) for systemic disparate treatment sex discrimination premised on the IRS initiative known as ERR- 16.

JURISDICTION

The court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the plaintiff's complaint raises claims arising under 42 U.S.C. § 2000e, *et seq*.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Florida.

DISCUSSION

*A.    Standard of Review - Summary Judgment*

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of meeting this exacting standard.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in the

light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of his claims, such that a reasonable jury could find in his favor. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). In response to a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *See Celotex*, 477 U.S. at 322. "If the non-moving party fails to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof, then the court must enter summary judgment for the moving party." *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998).

### B. *Merits Of Defendant's Motions For Summary Judgment*

#### 1. *The 1994 and 1995 Failure to Promote Claims*

With respect to Mr. Anisman's 1994 and 1995 failure to promote claims, the defendant argues that Mr. Anisman failed to exhaust his administrative remedies because Mr. Anisman did not initiate

contact with an IRS EEO counselor within 45 days of the alleged discriminatory acts. "In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'" *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) (quoting *Brown v. Gen. Sews. Admin.*, 425 U.S. 820, 833 (1976)). One such time limitation pertains to a federal employee's initiation of a claim. Federal regulation mandates that "[an] aggrieved person must initiate contact with a[n] [EEO] Counselor within 45 days of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). If a federal employee has not complied with this 45-day time limit for initiating contact with the appropriate EEO counselor, a district court is empowered to dismiss the claim for failure to exhaust available administrative remedies. *See McFarland*, 307 F.3d at 406.

An noted above, Mr. Anisrnan first initiated contact with an IRS EEO counselor on October 10, 1996, approximately seventeen days after his September 1996 non-selection for promotion. Mr. Anisman therefore initiated contact with an EEO counselor for his 1996 failure to promote claim in a timely fashion. However, Mr. Anisrnan's EEO counselor contact falls well outside the 45-day time period for pursuing claims based on the July 14, 1994 and the May 14, 1995 non-selections for promotion. Absent exceptional circumstances, Mr. Anisman's 1994 and 1995 failure to promote claims should be dismissed for failure to exhaust administrative remedies.

Despite the significant delay in initiating contact with an EEO counselor, Mr. Anisman contends that the court should consider the 1994 and 1995 non-selections for promotions under a "continuing violation" theory. In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court clarified the operation of Title VII's timely-filing requirements and the "continuing violation"

5

doctrine. *See* 536 U.S. 101 (2002). With respect to "discrete discriminatory or retaliatory acts" occurring outside the limitations period, the Court held that the timely-filing requirements erect an absolute bar to recovery. *See id.* at 114. In so doing, the Court rejected the application of a "continuing violation" theory where the plaintiff alleges a discrete act of discrimination.[3] The Court reasoned that "discrete acts of discrimination" such as "termination, failure to promote, denial of transfer, or refusal to hire" are easy to identify, and each "constitutes a separate actionable 'unlawful employment practice.' " *Id*. Because each is an identifiable violation of Title VII, "[each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id*. at 113. The court noted, however, that pre-limitations acts can be used, where relevant, "as background evidence in support of [the] timely claim," but they cannot themselves form the basis for liability. *Id*.

The *Morgan* decision specifically addressed the 180/300-day filing rule for non-federal employees. However, courts have treated the 45-day requirement for federal employees as analogous and have applied *Morgan*'s reasoning in this context. *See, e.g.*, *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003); *McFarland*, 307 F.3d at 408 (applying *Morgan* to a postal employee's claim of constructive discharge as a result of sex discrimination where the Postal Service alleged that the employee did not timely initiate her claim); *Jensen v. Henderson*, 315 F.3d 854, 859 n.9 (8th Cir. 2002). Here, Mr. Anisman's claims concern the defendant's alleged discriminatory failure to promote, an employment action explicitly identified by the *Morgan* court as a "discrete discriminatory act." *See Morgan*, 536 U.S. at 114. Therefore, with respect to the 1994 and 1995 failure to promote

---

[3] The Court distinguished claims in which the plaintiff alleges that he or she was subjected to a hostile work environment. For those claims, the Court held, "consideration of the entire scope of [the] claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id*. at 105.

claims, Mr. Anisman cannot avail himself of a "continuing violation" theory in order to circumvent the 45-day time limit for initiating contact with an EEO counselor.

Finally, Mr. Anisman contends that the limitations period should be tolled. Because exhaustion requirements pursuant to Title VII are not jurisdictional prerequisites, they are subject to waiver, estoppel, and equitable tolling. *See Zipes v. Trans WorldAirlines, Inc.*, 455 U.S. 385, 393 (1982). A plaintiff, however, must establish that tolling is warranted. *See Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993). In particular, equitable tolling is inappropriate when a plaintiff did not file an action promptly or failed to act with due diligence. *See id.* Equitable tolling "is an extraordinary remedy which should be extended only sparingly." *Id*. Mr. Anisman believes that equitable tolling is appropriate in this case because he claims that the IRS secretly implemented its initiative known as ERR-16. Mr. Anisman has provided no evidence to support his claim that the IRS implemented ERR-16 in a surreptitious manner. To the contrary, the record establishes that ERR-16 was a publically announced and published initiative on the part of the IRS. Upon its adoption, ERR-16 was distributed throughout the IRS and to the National President of the National Treasury Employees Union. ERR-16 was referenced and described in the Equal Opportunity Section of the Internal Revenue Manual. Furthermore, there is evidence in the record that Mr. Anisman suspected unequal or unfair treatment long before he contacted an EEO counselor. As a result, equitable tolling is not appropriate in this case.

For these reasons, the court will dismiss Mr. Anisman's 1994 and 1995 failure to promote claims for failure to timely initiate contact with an EEO counselor and to exhaust administrative remedies.

*2.      The 1996 Failure to Promote Claim*

With respect to Mr. Anisman's 1996 failure to promote claim, the defendant argues that it can justify this non-promotion with a legitimate nondiscriminatory reason, and Mr. Anisman cannot prove that the defendant's proffered reason is pretextual. Under the burden-shifting framework developed for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff must first establish a *prima facie* case. *See Roper v. Foley*, 2006 WL 1004377, at *5 (11th Cir. Apr. 18, 2006). Once the plaintiff has established its *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *See id.* The burden then shifts back to the plaintiff to show that the defendant's articulated reason is merely a pretext and that the defendant's true reason for discharging the plaintiff was discrimination. *See id.* At this point, the plaintiff must "present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext where an employer has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." *Elrod v. Sears Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991).

A plaintiff establishes a *prima facie* case of discriminatory failure to promote by showing that (1) he is a member of a protected class; (2) he was qualified and applied for the promotion; (3) he was rejected despite his qualifications; and (4) other equally or less qualified employees who were not members of the plaintiff's protected class were promoted. *Roper*, 2006 WL 1004377, at *5 (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004)). In this case, the defendant has conceded that Mr. Anisman has made out a *prima facie* case. However, the defendant argues that its actions were justified because the female employees selected for promotion over Mr. Anisman

8

scored higher during the ranking process utilized to award promotions. The defendant contends that Mr. Anisman cannot demonstrate that this legitimate nondiscriminatory reason is pretextual.

The defendant has presented evidence that Mr. Anisman applied for promotion to a GS- 13 estate tax attorney position in response to IRS Vacancy Announcement Number 96B0031B. Mr. Anisman applied for a position in the West Palm Beach post of duty and was determined to be initially eligible for promotion. Mr. Anisman's application was then referred to a panel of three individuals for ranking in accordance with union procedures set forth in a negotiated agreement. There were three subparts to this ranking process. Part A is a mathematical calculation, in which an applicant's critical element scores from his or her annual evaluation is divided by the total number of critical elements and then multiplied by six. In part B of the ranking process, the ranking panel assigns a number to the applicant based on the panel's estimation of the applicant's ability to perform in the position applied for. Part C of the ranking process is a mathematical calculation of the number of awards received by the applicant in the previous three years. The scores in parts A, B, and C are then added together to obtain the applicant's final ranking score.

Based on this ranking process, the ranking panel compiled a "highly qualified" candidate list with a cut-off score of 42.00. Mr. Anisman scored a 42.02 in the ranking process and was found to be "highly qualified." The other "highly qualified" candidates and their ranking scored are listed below:

| | |
|---|---|
| Richard Dowling (male) | 48.68 |
| Janet Doria (female) | 47.00 |
| Susan Cantwell (female) | 45.30 |
| Kay Rowe (female) | 43.02 |
| Arnold Anisman (male) | 42.02 |

After receiving this list, the selecting official promoted the four highest scoring individuals to the GS-13 estate tax attorney position. However, not all of these candidates had applied to all possible place of duty locations. Richard Dowling applied only for a position in the Miami post of duty, where he was placed. Susan Cantwell and Janet Doria applied for the Sunrise post of duty; only Susan Cantwell was selected for that location. Susan Cantwell, Janet Doria, Kay Rowe, and Mr. Anisman applied for the West Palm Beach post of duty, and Janet Doria and Kay Rowe were selected for West Palm Beach.

Mr. Anisman contends that he should have received a higher ranking score than the individuals selected for promotion in West Palm Beach because he had more years of experience than either Janet Doria or Kay Rowe.[4] The record suggests, however, that both Janet Doria and Kay Rowe were better qualified than Mr. Anisman in other respects. For example, Kay Rowe held an advanced LLM degree in taxation, which Mr. Anisman did not possess. Additionally, Kay Rowe had received more performance awards than Mr. Anisman in the three years preceding her promotion. Janet Doria had received significantly higher evaluations than Mr. Anisman. Notably, the ranking process utilized by the IRS to evaluate potential candidates for promotion placed special emphasis on the applicant's evaluations (part A) and the applicant's performance awards (part C). These gender-neutral criteria account at least in part for Kay Rowe's and Janet Doria's higher rankings. The fact that the IRS placed less emphasis on an applicant's total experience in years does not raise an inference of sex discrimination. *See Pennington v. City of Huntsville,* 26 1 F.3d 1262, 1267 (11th Cir. 2001) ("A

---

[4] Because Mr. Animsan applied for promotion in the West Palm Beach post of duty and nowhere else, Janet Doria and Kay Rowe are the only appropriate comparators the court can use to determine whether less qualified female candidates were promoted over Mr. Anisman. *See, e.g.*, *Silvera v. Orange County School Bd.,* 244 F.3d 1253, 1259 (11th Cir. 2001).

plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason," as long as "the reason is one that might motivate a reasonable employer."); *see also Rowell v. BellSouth Corp.,* 433 F.3d 794, 798-99 (11th Cir. 2005) (explaining that "[i]t is by now axiomatic that we cannot second-guess the business decisions of an employer"). Apart from the existence of ERR-16, which is discussed in detail below, Mr. Anisman has provided no additional evidence in support of his claim. Therefore, because there is no genuine issue of material fact that the IRS's proffered reason was actually pretext for discrimination, the court will grant the defendant's motion for summary judgment as to Mr. Anisman's 1996 failure to promote claim.

       3.     *Mr. Anisman's Systemic Disparate Treatment Claim*

Finally, the defendant argues that Mr. Anisman's systemic disparate treatment claim should be dismissed because Mr. Anisman has failed to provide any evidence linking ERR-16 to the alleged unlawful employment actions complained of in this case. In 1990, the IRS announced policy initiative ERR-16 to address diversity within the workplace. Mr. Anisman characterizes ERR-16 as a "preference/quota system," although the initiative does not contain any explicit quotas or numbers. Instead, the initiative states broad policy goals, including: (1) strengthening the accountability of all managers and executives to advance equal opportunity objectives; (2) increasing representation for minorities and women in managerial and executive positions; (3) educating all IRS personnel to be sensitive to others in a multi-cultural environment; (4) ensuring effective recruitment, development, advancement, and retention of minorities and women; and (5) structuring and managing an effective EEO program which supports the Service's responsibility for and total commitment to equal employment opportunity. The gravamen of Mr. Anisman's claim is that, as a result of this policy, he

11

received less favorable evaluations and fewer performance awards than his female counterparts, which ultimately lowered the ranking scores used to make the decisions regarding his promotion.

In *Carter v. O'Neill*, the Fifth Circuit considered a case in which the plaintiff asserted virtually identical claims as Mr. Anisman. *See* 78 Fed. Appx. 978, 979 (5th Cir. 2003) (unpublished). In *Carter*, the plaintiff's complaint also contained two counts, one for discrimination premised on a non-promotion, and one for institutional discrimination arising from the IRS initiative ERR-16. *Id*. The district court dismissed all of the plaintiff's claims, and the Fifth Circuit affirmed. *Id*. As to the claim that "systematic reverse discrimination over many years prevented [the plaintiff] from acquiring the experience and performance evaluations necessary to compete with racially and sexually favored revenue agents and resulted in [the plaintiff's] failure to obtain promotion," the Fifth Circuit held that the plaintiff's systemic disparate treatment claim could not stand alone as a separate cause of action absent a causal nexus between the alleged historic or current favoring of females and the plaintiff's failure to obtain promotion. *Id.*; *see also Whalen v. Rubin*, 91 F.3d 1041, 1045 (7th Cir.1996) (mere existence of an affirmative action policy is insufficient to prove intentional discrimination absent evidence of a link between the IRS's policies and its actions towards the Title VII plaintiff); *Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2003) (existence of affirmative action policy, coupled with evidence that policy was followed in the adverse employment action, constituted direct evidence of unlawful discrimination). In addition, the court concluded that the plaintiff's inability to demonstrate to the district court that such a causal nexus existed proved fatal to his claim. *Id.*[5]

---

[5] The Fifth Circuit continued:
> Assuming, without granting, that [the plaintiff] has demonstrated both the existence of an institutionalized system of affirmative action and its negative cumulative effect on white male revenue agents by placing beyond their reach the necessary work experience, awards, and relative fitness

The same deficiencies that proved fatal to the plaintiff's claim in *Carter* apply to Mr. Anisman's claim in the case at bar, as Mr. Animsan has failed to causally connect his non-promotion with the IRS's implementation of ERR-16. Although Mr. Anisman asserts that he received less favorable evaluations and fewer performance awards as a result of ERR-16, Mr. Anisman has failed to specifically identify any evaluations or performance awards that he believes were awarded on the basis of something other than merit. Nor has Mr. Anisman provided evidence of instances where, as he has alleged, he was assigned different work or received less assistance than his female counterparts. As the *Carter* court observed, Mr. Anisman does not carry his burden at this stage in the litigation by merely demonstrating that the IRS promulgated the workplace diversity initiative ERR-16. *Id*. at 980. Instead, Mr. Anisman must demonstrate "specific adverse consequences to him in this particular promotion-seeking effort," consequences that are attributable to the implementation and operation of ERR-16. *Id*. Because Mr. Anisman has failed to demonstrate that there is a genuine issue of material fact with respect to these issues, Mr. Anisman's claim for systemic disparate treatment must be dismissed.

---

ratings, [the plaintiff] has not causally connected his own individual work experiences with his failure to obtain the particular promotion here at issue. This is perhaps best illustrated by [the plaintiff's] insistence that the selection panel's reliance on prior CEP experience in ranking the twelve applicants for the three positions, in combination with the systematic prevention of white male agents' obtaining such experience in recent years, constituted a discriminatory practice in the selection process (the plaintiff advances a similar claim in connection with service awards and fitness ratings). Despite this insistence, though, [the plaintiff] has not shown the specific nexus between the absence of CEP experience in his resume and the denial of this particular promotion.

*Id*. at 979-80.

Order Granting Defendant's Motions for Summary Judgment
Anisman v. Snow
Case No. 04-80995-CIV-HURLEY/HOPKINS

## CONCLUSION

For the reasons stated herein, the court concludes that Mr. Anisman has failed to provide any record evidence to create a genuine issue of material fact that the IRS discriminated against Mr. Anisman on the basis of sex.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

1. The defendant's partial motion to dismiss [DE # 42], which the court converted into a partial motion for summary judgment [DE # 49], and the defendant's motion for summary judgment [DE # 62] are **GRANTED**.

2. A final judgment will be issued in a separate order.

**DONE** and **SIGNED** in chambers at West Palm Beach, Florida this 30th day of October, 2006.

_____
Daniel T. K. Hurley
United States District Judge

*Copies provided to all counsel of record*